## INTERSTATE FILMS COMPANY ET AL. *v.* WILSON AMUSEMENT COMPANY.

[No. 41, October Term, 1930.]

*Decided December 5th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE and SLOAN, JJ.

*Frank B. Ober* and *Abram C. Joseph,* with whom were *Willard S. McKay, William A. Grimes, Daniel C. Joseph,* and *Janney, Ober, Slingluff & Williams,* on the brief, for the appellants.

*Myer Rosenbush,* with whom were *Rosenbush & Bernstein* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appeal in this case is from the issue of an injunction to restrain exhibition of another moving picture play in sup-

posed conflict with exclusive rights vested in the complainant by the contract stated and considered in the case last decided, between the Kernan Company and The Wilson Amusement Company, owners of the Auditorium and Rivoli Theatres, respectively, in Baltimore City. In this instance the producer and the distributors appeared as additional defendants, and the injunction was issued after answers and demurrers had been filed by all defendants, with affidavits and other exhibits. The case differs from the preceding one also in that there is now no question of lack of notice to the Kernan Company of the claim of prior, exclusive rights in the owner of the Rivoli Theatre. The latter company, on April 5th, 1930, mailed a letter to every other theatre in Baltimore giving notice of its claim and a warning against making a contract with the producer or distributor for any play not previously rejected by the owner of the Rivoli Theatre.

The play concerned in this case is one named "The King of Jazz," and the answer avers that it was one produced at much more than ordinary expense, almost $1,700,000. It is not listed in the contract, and would come only within the contract provision regarding additional plays. It was offered to the complainant before the full film had been received in this part of the country, at special terms or prices, in excess of any stated for plays listed in the original contract, and much more elaborate, in their details, but, according to the answers, in conformity with prices demanded and received from theatres in other cities for this particular play. In reply to the offer, the complainant demanded an opportunity to screen the film before deciding whether to accept or reject it. This was impossible in the time allowed, and a compromise on exhibition of sample sections of the film was rejected by the complainant. At this stage in the negotiations the producer and distributor announced that they elected to except and exclude this play as a road show, under the provision of the contract reserving them the right to do so, at any time before exhibition, with any two plays contracted for in Baltimore City. Thereupon the complainant filed its application for an injunction, the answers were filed, putting in

issue much of the case advanced by the complainant, and demurrers were filed by all defendants, with exhibits; and upon the case so presented the court then issued a preliminary injunction. This we find to have been erroneous.

The court below construed the contract to give the complainant a right to a preliminary screening and inspection before it was required to accept or reject a play, and concluded that as this right had not been given with respect to "The King of Jazz," the play continued to be subject to the complainant's option.

In the face of the facts and circumstances averred in the answers and the accompanying affidavits, it might be difficult to agree in this construction, even if it were clear that the clause concerning the preliminary screening of plays, quoted in the opinion on the preceding appeal, might, taken alone, be construed to confer the right so to screen additional plays, or be considered ambiguous. But we think we need not consider further this difficulty or any other of those standing in the way of granting the injunction, as the exercise by the defendants of their right to withdraw the particular play from the contract as a road show appears to us to have removed the matter from all controversy. It may well be true that the producer and distributor resorted to this right of exclusion merely or mainly as a means of escaping from the controversy raised by the complainant, but the right reserved is, as to two plays, without qualification with respect to purpose, and we see no legal ground for interfering with its exercise, or with the result that the complainant has lost all rights to the particular play by the withdrawal.

*Order reversed, and bill dismissed, with costs to the appellants.*